Opinion issued November
18, 2010

 

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00547-CV

———————————

Hot-Hed, Inc. and Cinaruco International, S.A., Appellants

V.

Safehouse
Habitats (Scotland), Ltd., Appellee



 



 

On Appeal from the 215th District
Court

Harris County, Texas



Trial Court Case No. 2006-26781

 



 

O P I N I O N

          Appellants, Hot-Hed, Inc. and Cinaruco
International, S.A. (collectively, “Hot-Hed”), appeal the trial court’s grant
of declaratory judgment against them in their suit for trademark infringement
against appellee, Safehouse Habitats (Scotland), Ltd. (“Safehouse”).  In four issues, Hot-Hed argues that the trial
court erred in (1) entering declaratory judgment that the “Habitat” mark is not
eligible for protection as a trademark under Texas or federal law; (2) awarding
Safehouse attorney’s fees under the Texas Uniform Declaratory Judgment Act
(UDJA); (3) refusing Hot-Hed’s timely request to issue findings of fact
and conclusions of law on the attorney’s fees award; and (4) declining to
submit Hot-Hed’s proposed special issue on statutory trademark infringement to
the jury.

Safehouse also appeals the judgment
of the trial court.  In three issues,
Safehouse argues that the trial court erred in (1) failing to either order the
cancellation of Hot-Hed’s Texas trademark registration or state that the term
“habitat” “has become incapable of serving as a mark under section
16.16(a)(4)(e) of the Texas Business and Commerce Code”; (2) failing to direct
the United States Patent and Trademark Office (USPTO) to dismiss Hot-Hed’s
proceedings before that office, or alternatively, failing to order Hot-Hed to
abandon those proceedings; and (3) failing to specify an award of post-judgment
interest in the judgment.

We modify and affirm as modified.

Background

Hot-Hed, a Texas corporation
involved with the development and manufacture of specialty products for the oil
and gas industry, began selling inflatable welding enclosures using the mark
“Habitat” in 1990.  Hot-Hed obtained
registration of the “Habitat” mark through the USPTO in 1991.  It subsequently allowed the federal
registration to lapse in 1998 when it failed to file an affidavit of continuing
use with the USPTO five years after it registered the mark.  However, Hot-Hed continued to market its
welding enclosures using the mark “Habitat.”

Safehouse, a Scottish private
limited company, does business in Texas but has no regular place of business here.  Safehouse designed and built its first
flexible welding enclosures in 2001 and started selling them in 2002 under the
name “Safehouse Habitats.”  Hot-Hed first
learned of Safehouse and its welding enclosures at a trade conference in
Houston in 2006.  Conference attendees
informed Hot-Hed that Safehouse was marketing a similar welding enclosure using
the term “habitat.”

In September 2005, Hot-Hed applied
for a new federal registration of its “Habitat” mark, and in March 2006,
Hot-Hed applied for registration of the trademark “Habitat” with the Texas
Secretary of State.  The Secretary of
State issued a state trademark registration on May 30, 2006.

In March 2007, Safehouse timely
filed a notice of opposition to Hot-Hed’s application for federal trademark registration
of the mark “Habitat” with the USPTO.

Meanwhile, on May 1, 2006, Hot-Hed sued
Safehouse in Texas state court alleging Texas common law trademark infringement
and unfair competition based on Safehouse’s use of the term “habitat” for its
welding enclosures.  In subsequent
amended petitions, Hot-Hed added causes of action for infringement of a
registered Texas trademark and for injury to business reputation and trademark
dilution under Texas Business and Commerce Code section 16.29.[1]

Safehouse attempted to remove Hot-Hed’s
state court action to federal court, arguing that Hot-Hed’s claims presented a
federal question.  On appeal, the Fifth
Circuit determined that no federal question was presented by Hot-Hed’s claims
against Safehouse and the cause was remanded to state court on February 12, 2007.

Safehouse counterclaimed in the
state court suit, seeking “a judicial declaration [under the UDJA] that the
term ‘habitat’ is not eligible for trademark protection under either state or
federal law” and seeking to have Hot-Hed’s Texas registration of the “Habitat”
mark cancelled pursuant to Texas Business and Commerce Code sections 16.16 and
16.25.[2]  Safehouse also petitioned for attorney’s fees
under Texas Business and Commerce Code section 16.25 and the UDJA.  In its prayer, Safehouse asked that the trial
court dismiss each of Hot-Hed’s claims with prejudice and enter an order that
Hot-Hed take nothing on those claims; declare that the term “habitat” is
generic or descriptive and not eligible for protection under state or federal
law; cancel Hot-Hed’s Texas trademark registration for the term “Habitat”; and
award it attorney’s fees.  It also generally
prayed for “such other and further relief in law and equity to which it may
show itself to be justly entitled.”[3]

On July 22, 2006, Safehouse applied
to the USPTO to federally register the mark “Safehouse Habitats,” and, on August
19, 2008, the USPTO issued a federal trademark registration for “Safehouse
Habitats.”

On August 27, 2008, Hot-Hed filed a
Petition of Cancellation asking the USPTO to cancel Safehouse’s federal registration
of “Safehouse Habitats.”

Subsequently, the Trademark Trial
and Appeals Board of the USPTO suspended the proceedings initiated by Hot-Hed
to register “Habitat” on behalf of Hot-Hed and to cancel Safehouse’s
registration of “Safehouse Habitats,” stating that the resolution of the issues
in the state court litigation could have a bearing on the issues in the federal
proceedings.

At trial of Hot-Hed’s state court
causes of action and Safehouse’s counterclaims, both sides presented evidence
regarding the use of the term habitat in relation to welding enclosures.  Hot-Hed presented evidence that it possessed
a registration from the Texas Secretary of State for the term “Habitat” when
used in connection with inflatable welding enclosures.  It also presented evidence that Safehouse had
used the term “Habitat” in marketing its welding enclosures.  Hot-Hed’s founder, Louis Wardlaw, testified
that he invented the term “Habitat” as it related to welding enclosures and
that Hot-Hed was the first to use that mark to market inflatable welding
enclosures.  Hot-Hed also presented
evidence that it had used the term “Habitat” continuously for twenty years and
that it had at one time secured federal registration of the mark.

Safehouse presented evidence that, from
their beginning in the 1960s, underwater welding enclosures were referred to as
“welding habitats” and that the term had been in continuous use since that time
to refer generally to welding enclosures, not just to Hot-Hed enclosures.  Patents for other welding enclosures filed throughout
the last three to four decades by third parties referred to the welding
enclosures as “habitats.”  Safehouse also
presented evidence that that term was used generally to refer to welding
enclosures by oil and gas companies, by the Minerals Management Services of the
United States Department of the Interior, and in an article entitled “Welding
Hot Work Habitats” that addressed the use of welding “habitats” in New Zealand
in 1990.

During the charge conference,
Hot-Hed objected generally to jury questions one through four as they were
submitted to the jury and filed two requested questions to replace the
submitted questions.  The instructions requested
by Hot-Hed, and refused by the trial court, were unconditional questions.  Question one asked whether the jury found it
“more likely so than not” that Hot-Hed has a “Texas common law trademark for
“HABITAT” that has been infringed by Safehouse.”  This proposed instruction defined trademark,
listed the elements of common law trademark infringement, and included
instructions on when marks are eligible for protection and explanations of
other elements of common law trademark infringement.  It likewise stated that Hot-Hed bore the
burden of proof on the issue generally, but it provided that Safehouse had the
burden of proving that Hot-Hed’s “Habitat” mark was not eligible for protection
by a preponderance of the evidence.  The
second proposed jury instruction addressed Hot-Hed’s statutory cause of action
for infringement of a Texas registered trademark.  The trial court refused both of these
proposed jury charges.

The first question the jury was
asked to consider was, “Do you find that the term ‘habitat’ is eligible for
protection as a trademark?”  The
instructions with question one defined “trademark,” stated that Hot-Hed or
Cinaruco had the burden of proving whether the term “habitat” was eligible for
protection, and explained the requirements for determining whether a term is
eligible for protection.  The jury
answered “No.”  Jury questions two
through nine were contingent on the answer to jury question number one.  Because the jury determined that “habitat”
was not eligible for trademark protection, it did not answer any of these
questions regarding the remaining elements of the parties’ claims.

Jury question ten asked, “Do you
find that Defendant Safe House is entitled to the recovery of its reasonable
and necessary attorney’s fees from Hot-Hed, Inc. and/or Cinaruco International,
S.A.?”  The jury answered “Yes” for both
Hot-Hed and Cinaruco.  Jury question
eleven asked, “Do you find more likely than not that Safe House’s use of the
“HABITAT” trademark will cause irreparable injury to the trademark owner?  The trademark owner has the burden of proof
for this issue by a preponderance of the evidence.”  The jury answered, “No.”  The verdict was returned by ten of the twelve
jurors.

Safehouse moved for entry of judgment,
asking the trial court to enter a take-nothing judgment against both Hot-Hed
and Cinaruco on all four of their affirmative claims.  Safehouse also asked that the trial court
enter a judgment declaring that the term “habitat” was not eligible for trademark
protection under either state or federal law and that “habitat” has become
incapable of serving as a mark, and ordering the cancellation of Hot-Hed’s
Texas registration of the term.  In
addition, Safehouse’s proposed judgment asked the trial court to instruct the
USPTO and Hot-Hed to dismiss Hot-Hed’s proceeding against Safehouse, to cancel
its registration of the mark “Safehouse Habitats,” and to instruct the USPTO to
refuse to register “habitat” as a trademark in Hot-Hed’s application for
federal registration of the term. 
Finally, Safehouse requested attorney’s fees based on the parties’
stipulation that the amount of reasonable and necessary attorney’s fees
incurred by Safehouse through trial was $1,255,000, and it requested that the
trial court assess costs against Hot-Hed and Cinaruco jointly and severally.[4]

The trial court signed its judgment
on April 20, 2009.  It ordered “that
Plaintiffs HOT-HED, INC. and CINARUCO INTERNATIONAL, S.A. take nothing on each
of the claims against” Safehouse, declared that “the term ‘habitat’ is not
eligible as a trademark under Texas or Federal law, namely the Lanham Act,
Title 15 of the United States Code,” and ordered that Safehouse recover from
Hot-Hed and Cinaruco, jointly and severally, attorneys fees of $1,255,000, with
additional attorney’s fees in the event of an appeal.[5]

On May 29, 2009, Hot-Hed requested
findings of fact and conclusions of law on the trial court’s award of attorney
fees, citing the timelines of Texas Rule of Civil Procedure 297.  On June 24, 2009, the trial court denied
Hot-Hed’s request for findings of fact and conclusions of law.

On June 11, 2009, Hot-Hed moved for
judgment notwithstanding the verdict, and on June 19, 2009, Hot-Hed moved for
new trial.  The trial court denied both of
these motions on July 27, 2009.  Both
Hot-Hed and Safehouse appealed.

Validity of Safehouse’s Declaratory
Judgment Counter-Claim

In its first issue, Hot-Hed argues
that the trial court erred in entering declaratory judgment that the “Habitat”
mark is not eligible for protection as a trademark under Texas or federal law.  Hot-Hed argues in part that the trial court
erred in entering this judgment because (1) eligibility for protection was
already an element of its claim for trademark infringement and (2) the
matter on which Safehouse sought a declaration was subsumed within Safehouse’s
action to cancel the trademark registration, which constituted a matured remedy
at law.

          The
UDJA provides that:

A person interested under a
deed, will, written contract, or other writings constituting a contract or
whose rights, status, or other legal relations are affected by a statute,
municipal ordinance, contract, or franchise may have determined any question of
construction or validity arising under the instrument, statute, ordinance,
contract, or franchise and obtain a declaration of rights, status, or other
legal relations thereunder.

 

Tex. Civ.
Prac. & Rem. Code Ann. § 37.004 (Vernon 2008); US Bank, N.A. v. Prestige Ford Garland Ltd. P’ship, 170 S.W.3d 272,
278 (Tex. App.—Dallas 2005, no pet.). 
Declaratory judgment is appropriate when a real controversy exists
between the parties, and the entire controversy may be determined by judicial
declaration.  Adams v. First Nat’l Bank of Bells/Savoy, 154 S.W.3d 859, 873 (Tex.
App.—Dallas 2005, no pet.) (citing Scurlock
Permian Corp. v. Brazos County, 869 S.W.2d 478, 486 (Tex. App.—Houston [1st
Dist.] 1993, writ denied)).  A trial
court may refuse to render or enter a declaratory judgment if the judgment will
not terminate the uncertainty or controversy giving rise to the
proceedings.  Id. (citing Spurlock, 869
S.W.2d at 486).

The UDJA is “not available to
settle disputes already pending before a court.”  Id.
(quoting BHP Petroleum Co. v. Millard,
800 S.W.2d 838, 841 (Tex. 1990)). 
“Ordinarily declaratory relief will not be granted where the cause of
action has fully matured and invokes a present remedy at law,” and “declaratory
judgment is improper if the relief requested is raised for the first time in an
amended petition and merely addresses the same issues as were raised in the
original petition.”  Prestige Ford, 170 S.W.3d at 278. 


“In certain instances, however, a
defensive declaratory judgment may present issues beyond those raised by the
plaintiff.”  Indian Beach Prop. Owners’ Ass’n v. Linden, 222 S.W.3d 682, 701
(Tex. App.—Houston [1st Dist.] 2007, no pet.); see also Millard, 800 S.W.2d at 842 (holding that defensive
declaratory judgment counter-claim that has greater ramifications than original
suit is proper).  “To qualify as a claim
for affirmative relief, a defensive pleading must allege that the defendant has
a cause of action, independent of the plaintiff’s claim, on which he could
recover benefits, compensation or relief, even though the plaintiff may abandon
his cause of action or fail to establish it.” 
Linden, 222 S.W.3d at 701 (quoting Gen. Land Office v. OXY U.S.A., Inc., 789 S.W.2d 569, 570 (Tex.
1990)).

Fact issues in declaratory judgment
proceedings may be tried and determined in the same manner that issues of fact
are tried and determined in other civil actions.  Id.
at 699 (citing Tex. Civ. Prac. &
Rem. Code Ann. § 37.007).  “The
power to determine an issue of fact, however, ‘does not concomitantly carry
with it the power to render such a finding of fact as a declaratory
judgment.’”  Id. (quoting Hill v. Heritage
Res., Inc., 964 S.W.2d 89, 140 (Tex. App.—El Paso 1997, pet. denied)).  If a factual dispute is the only issue to be
resolved, a declaratory judgment is not the proper remedy.  Id.

Here, Hot-Hed alleged causes of
action for common law trademark infringement, unfair competition, statutory
infringement of a registered Texas trademark, and injury to business reputation
and trademark dilution—all causes
of action relating to Texas law.  Safehouse’s
counterclaim under the UDJA sought a declaration from the trial court that
would encompass both state and federal eligibility of the term “Habitat” for trademark
protection and provide a ruling from the trial court that would dispose of
proceedings between Hot-Hed and Safehouse in the USPTO.  Thus, Safehouse could elect to seek a
declaratory judgment and an adjudication of rights on which it could obtain relief.
 This counterclaim constituted more than
a request that the trial court repeat a factual finding.  See id.
at 699–701.

We conclude that Safehouse’s
declaratory judgment counterclaim stated a claim for affirmative relief and was
the proper subject of a declaratory judgment.

Propriety of Trial Court’s
Declaratory Judgment

Hot-Hed also argues in its first
issue that the trial court erred in entering declaratory judgment that the term
“habitat” was ineligible for trademark protection under either Texas or federal
law because (1) Safehouse failed to secure jury findings necessary to overcome
the statutory presumption of validity to which the mark was entitled and to
support the declaration; (2) the declaratory judgment failed to specify the
category of goods or services with respect to which the mark is ineligible for
protection and thus is overly broad; and (3) the declaratory judgment was
unsupported by the pleadings as to Cinaruco because Safehouse never asserted a
claim for declaratory judgment against Cinaruco.

1.    
Necessity of jury findings
to overcome presumption and support declaration

 

Hot-Hed argues that the jury’s
negative answer to question one “is not a finding by a preponderance of the
evidence that ‘Habitat’ is not eligible for protection as a mark because the
special issue placed the burden of proving eligibility for protection on
Hot-Hed.”  Safehouse first contends that
Hot-Hed failed to preserve this argument. 
However, Hot-Hed filed an alternative jury charge, which provided that
Safehouse bore the burden of proving that the mark “Habitat” was ineligible for
protection as a trademark.

We conclude that Hot-Hed’s
submission of its alternative jury charge preserved this argument.  See Tex. R. Civ. P. 274 (“A party objecting
to a charge must point out distinctly the objectional matter . . . .  Any complaint as to a question, definition,
or instruction . . . is waived unless specifically included in the objections”).

Hot-Hed essentially argues that the
jury finding to question number one is insufficient to support the declaratory
judgment because the question failed to place the burden of proving eligibility
on Safehouse and because the evidence was insufficient to support the jury’s
conclusion.[6]  Safehouse contends that the “presumption of
validity” that arises from a Texas trademark registration does not shift the
burden of proof to the party challenging the validity of the mark, it merely
shifts to the challenging party the burden of producing or going forward with
the evidence; once some evidence is produced, the presumption disappears and
the burden of proof remains on Hot-Hed. 
Safehouse argues that Hot-Hed failed to carry its burden of persuasion
that the “habitat” mark was eligible for protection, and the jury finding that
it was not eligible sufficiently supported the trial court’s declaratory
judgment.  Thus, Safehouse was not
required to procure additional jury findings to overcome the presumption.

To determine whether
the evidence is legally sufficient to support a finding, we review the entire
record, crediting favorable evidence if reasonable jurors could and
disregarding contrary evidence unless reasonable jurors could not.  See City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005).  If the
evidence would enable reasonable and fair-minded people to differ in their
conclusions, then it is legally sufficient to support the finding.  See id.  In reviewing the factual sufficiency of the
evidence, we consider all the evidence and set the finding aside only if it is
so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust.  Cain
v. Bain,
709 S.W.2d 175, 176 (Tex. 1986) (per curiam).  Whether reviewing the evidence for legal or
factual sufficiency, we assume that jurors decided questions of credibility or
conflicting evidence in favor of the finding if they reasonably could do so.  See City
of Keller,
168 S.W.3d at 819–20.  We do not substitute our judgment for that of
the trier-of-fact if the evidence falls within this
zone of reasonable disagreement.  Id. at 822.

The Texas Business and Commerce
Code provides that:

A certificate of
registration issued by the secretary of state under this chapter, or a copy of
it certified by the secretary of state, is admissible in evidence as prima
facie proof of

 

(1) the validity of the
registration;

 

(2) the registrant’s
ownership of the mark; and

 

(3) the registrant’s exclusive
right to use the mark in commerce in this state in connection with the goods or
services specified in the certificate, subject to any conditions and
limitations stated in the certificate.

 

Tex. Bus.
& Com. Code Ann. § 16.15(c) (Vernon 2002).  “Registration creates a rebuttable
presumption that the party registering the mark is the owner thereof, and that
the registration is valid and exclusive to the registrant.”  All Am.
Builders, Inc. v. All Am. Siding of Dallas, Inc., 991 S.W.2d 484, 489 (Tex.
App.—Fort Worth 1999, no pet.).  “A mark,
valid and exclusive to the registrant, is nothing more than constructive notice
in this state of the registrant’s claim of ownership.”  Id.
at 489 n.5. (citing Tex. Bus. & Com.
Code Ann. § 16.15(b)).  A
rebuttable presumption shifts the burden of producing evidence to the party
against whom it operates.  Id. at 489 (citing Gen. Motors Corp. v. Saenz, 873 S.W.2d 353, 359 (Tex. 1993)).  Once evidence contradicting the presumption has
been offered, the presumption is extinguished and shall not be weighed or
treated as evidence, and the presumption has no effect on the burden of
persuasion.  Id. (citing Saenz, 873
S.W.2d at 359).

Here, the presumption that arose
from Hot-Hed’s evidence that “habitat” was a registered trademark in Texas was
that Hot-Hed was the owner of the “habitat” mark and that the registration was
valid and exclusive to it.[7]  See Tex. Bus. & Com. Code Ann. §
16.15(c)(3); All Am. Builders, 991
S.W.2d at 489.  At trial, Safehouse
presented evidence that the term “habitat” had been used since the 1960s as a
generic term referring to welding enclosures and that multiple companies had
used the term “habitat” to describe their welding enclosure.  This evidence was sufficient to rebut the
presumption that the registration of the “habitat” mark was valid and that the
mark was protectable at the time Hot-Hed sought registration.  Thus, the presumption was extinguished and
the burden of persuading the jury that the term “habitat” was eligible for
protection remained with Hot-Hed.  See All Am. Builders, 991 S.W.2d at 489.

          The
elements in common law trademark infringement under Texas law are the same as
those under federal trademark law.  Id. at 488.  Thus the party seeking to establish trademark
infringement must first establish that the name it seeks to protect is eligible
for protection.  Id. at 488–89 (citing Union
Nat’l Bank, Laredo v. Union Nat’l Bank, Austin, 909 F.2d 839, 844 (5th Cir.
1990)).  Whether a word or phrase is
eligible for protection is determined by the category to which is belongs: (1)
generic; (2) descriptive; (3) suggestive; or (4) arbitrary.  Id. at
489 (citing Union Nat’l Bank, Laredo,
909 F.2d at 844).  Generic terms are
never eligible for protection, whereas descriptive terms may only be protected
after the party seeking to establish infringement provides proof that the term
for which it seeks protection has a secondary meaning.[8]  Id.

          At
trial, Hot-Hed produced evidence that it had used the term “habitat” for twenty
years in connection with its inflatable welding enclosures, that it had
previously obtained federal registration of the “habitat” mark, and that it
currently held a Texas registration of the mark.  It also presented Wardlaw’s testimony that he
was the first one to use the term as it relates to welding enclosures in the
1990s.  However, Safehouse presented
copious evidence that the term “habitat” had been in use to describe welding
enclosures generally for decades before Hot-Hed claimed it created and began
using the term, including numerous patent applications and other instances of
use.  This evidence was sufficient to allow
reasonable and fair-minded jurors to conclude that “habitat” was ineligible for
protection.

          After
considering the evidence introduced at trial and the jury instructions on when
a word or phrase is eligible for trademark protection, the jury concluded that
“habitat” was not eligible for trademark protection.  To reach this finding, the jury necessarily
had to conclude that the mark was either generic or descriptive with no
secondary meaning.  See id., 991 S.W.2d at 489; see
also Union Nat’l Bank, Laredo, 909 F.2d at 844.  The jury’s finding was not so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust.  See Cain, 709 S.W.2d at 176; see also City
of Keller, 168 S.W.3d at 819–20  (holding that we assume that jurors decided
questions of credibility or conflicting evidence in favor of finding if they
reasonably could do so).  We conclude
that this finding was sufficient to support the trial court’s declaration that
the mark was ineligible for protection under Texas and federal law.

2.     Specificity of declaration

Hot-Hed also argues that the trial
court’s declaration was overbroad because “no basis exists for a declaration
that the “Habitat” mark is ineligible for protection with respect to any
product or service other than welding enclosures.”  As Safehouse points out in its brief,
although the term “habitat” has been used as a registered trademark by third
parties for non-welding goods like wine, herbicide, and fishing equipment, the
judgment here does not adjudicate the use of the term in any of those contexts.  See
Stark v. Benckenstein, 156 S.W.3d 112, 118 (Tex. App.—Beaumont 2004, pet.
denied) (stating in declaratory judgment context that “a trial court’s
declarations do not prejudice the rights of any person not a party to the
proceeding”).  Thus, we determine that
the trial court’s judgment was limited to a declaration that “habitat” is not
eligible for trademark protection in connection with welding enclosures and any
related accessories or other items, and we modify the judgment to reflect the
proper scope of the declaration.  See Lee v. O’Leary, 742 S.W.2d 28, 33
(Tex. App.—Amarillo 1987) (“Courts of Appeals have the power to modify the
amount of recovery and reform a judgment to conform with the pleadings and
evidence.”), rev’d on other grounds, Lee v. Key West Towers, Inc., 783 S.W.2d
586 (Tex. 1989); see also State Nat’l
Bank v. Farah Mfg. Co., 678 S.W.2d 661, 697 (Tex. App.—El Paso 1984, writ
dism’d by agr.) (holding same); Wenk v.
City Nat’l Bank, 613 S.W.2d 345, 353 (Tex. Civ. App.—Tyler 1981, no writ)
(holding same).

We modify the trial court’s
declaratory judgment to state that “the term ‘habitat’ is not eligible as a
trademark under Texas or Federal law, namely the Lanham Act, Title 15 of the
United States Code, when used in
connection with welding enclosures and any related accessories or items.”

We overrule Hot-Hed’s first issue.

Result of Declaratory Judgment

          In
its first issue on cross-appeal, Safehouse argues that the trial court erred in
failing to order the cancellation of Hot-Hed’s Texas trademark registration and
in not stating that the term “habitat” “has become incapable of serving as a
mark under section 16.16(a)(4)(E) of the Texas Business and Commerce Code.”  In its second issue, Safehouse argues that the
trial court erred in failing to direct the USPTO to dismiss Hot-Hed’s
proceedings before that office, or alternatively, in failing to order Hot-Hed
to abandon those proceedings.

 

A.      Cancellation of
Hot-Hed’s Texas Trademark Registration

In its counterclaim, Safehouse
sought cancellation of Hot-Hed’s Texas registration of the term “habitat” as a
trademark.  It argues on appeal that the
trial court erred in refusing to grant relief on this claim.  The Business and Commerce Code provides that:

The secretary of state shall
cancel

 

. . . .

 

(4) a registration
concerning which a district or appellate court has rendered a final judgment,
which has become unappealable, cancelling the registration or finding that

 

(A) the registered mark has
been abandoned;

 

(B) the registrant under
this chapter or under a prior act is not the owner of the mark;

 

(C) the registration was
granted contrary to the provisions of this chapter;

 

(D) the registration was
obtained fraudulently; or 

 

(E) the registered mark has
become incapable of serving as a mark.

 

Tex. Bus. &
Com. Code Ann. § 16.16(a)(4) (Vernon 2002); All
Am. Builders, 991 S.W.2d at 489 n.5.

          Safehouse
presented evidence at trial that the term “habitat” was used generally to refer
to welding enclosures.  We have already
concluded that this evidence was sufficient to support the jury’s conclusion,
and we have likewise concluded that Hot-Hed’s arguments that Safehouse failed
to obtain the proper jury findings are unavailing.  The jury’s finding that the term “habitat” is
ineligible for trademark protection establishes that the mark has become
incapable of serving as a mark.  See All Am. Builders, 991 S.W.2d at
488–89 (“The threshold issue is whether the word or phrase is initially
eligible for protection.”).  We conclude
that Safehouse was entitled to an order from the trial court cancelling
Hot-Hed’s Texas registration of the mark “habitat” on the ground that it is no
longer capable of serving as a mark.  See Tex.
Bus. & Com. Code Ann. § 16.16(a)(4)(E).

          Therefore,
we modify the judgment to include an order cancelling Hot-Hed’s Texas
registration of the mark “habitat.”

          We
sustain Safehouse’s first issue on cross-appeal.

B.      Dismissal of
Proceedings before USPTO

          Safehouse
also argues that the trial court erred in failing to order the USPTO to dismiss
Hot-Hed’s petition to cancel Safehouse’s federal registration of “Safehouse
Habitats” and to deny Hot-Hed’s application for federal registration of the
mark “habitat,” or, alternatively, in failing to order Hot-Hed to abandon those
proceedings.

However, Safehouse never made any
affirmative claim for such relief in its pleadings.  Texas Rule of Civil Procedure 301 requires
that the “judgment of the court shall conform to the pleadings, the nature of
the case proved and the verdict.”  Tex. R. Civ. P. 301; see also Stoner v. Thompson, 578 S.W.2d
679, 682–84 (Tex. 1979) (holding that judgment cannot grant relief that is not
contained in party’s pleadings and that general prayer for relief cannot
“enlarge a pleading to the extent that it embraces an entirely different cause
of action”).  Because Safehouse did not
file pleadings requesting relief on these grounds, it cannot now complain that
the judgment does not grant that relief.

          We
overrule Safehouse’s second issue on cross-appeal.

Attorney Fees

          In
its second issue, Hot-Hed argues that the trial court erred in awarding Safehouse
attorney’s fees under the UDJA and that there was no basis for entering
judgment against Cinaruco because Safehouse never pleaded any counterclaims
against Cinaruco.  

          We
review a trial court’s award of attorney’s fees under the UDJA for an abuse of
discretion.  City of Carrollton v. RIHR Inc., 308 S.W.3d 444, 454 (Tex. App.—Dallas
2010, pet. denied); Lesikar v. Moon,
237 S.W.3d 361, 375 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  A trial court abuses its discretion when it
reaches a decision so arbitrary and unreasonable as to constitute a clear and
prejudicial error of law.  Lesikar, 237 S.W.3d at 375.

 

 

1.     Safehouse’s entitlement to fees under the UDJA

          Section
37.009 of the UDJA provides, “In any proceeding under this chapter, the court
may award costs and reasonable and necessary attorney’s fees as are equitable
and just.”  Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon
2008).  However, a party cannot use the
UDJA to obtain an otherwise impermissible attorney’s fee.  RIHR,
308 S.W.3d at 454.  “It is an abuse of
discretion to award attorney’s fees under the Uniform Declaratory Judgment Act
when the statute is relied upon solely as a vehicle to recover attorney’s
fees.”  Id. (citing Tex. State Bd. of
Plumbing Exam’rs v. Assoc. Plumbing-Heating-Cooling Contractors of Tex., Inc.,
31 S.W.3d 750, 753 (Tex. App.—Austin 2000, pet. dism’d)); see also City of Houston v. Texan Land & Cattle Co., 138 S.W.3d
382, 392 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that party may
not use declaratory judgment action to seek same relief afforded under another
of its causes of action to obtain otherwise impermissible attorney’s fees).  We note that the parties stipulated to the amount of
attorney’s fees, and Hot-Hed does not contend that they were unreasonable or
unnecessary—only
that Safehouse was not entitled to any attorney’s fees at all.

We have already addressed Hot-Hed’s
arguments that Safehouse’s declaratory judgment counterclaim was improper
because it did not seek affirmative relief other than the relief that was
already available through other claims pending before the trial court, and we
concluded that Safehouse’s UDJA claim was proper.  Safehouse succeeded on its declaratory
judgment claim.  Therefore, we conclude
that the trial court did not abuse its discretion in awarding Safehouse
attorney’s fees.

2.     Safehouse’s entitlement to fees from Cinaruco

We likewise conclude that the trial
court did not err in granting attorney’s fees jointly and severally against
Hot-Hed and Cinaruco.  We observe that Safehouse’s
last amended counterclaim was filed before the amended petition adding Cinaruco
as a plaintiff and that Hot-Hed and Cinaruco’s subsequent pleadings were styled
as “plaintiffs’” response to the counterclaims. 
Furthermore, jury question number ten explicitly listed both Hot-Hed and
Cinaruco as possible parties against whom Safehouse could collect attorney’s
fees.  Neither plaintiff entered any
objection to this instruction.  Thus, this
issue was tried by consent even though it was not raised in the pleadings.  See Tex. R. Civ. P. 67 (“When issues not
raised by the pleadings are tried by express or implied consent of the parties,
they shall be treated in all respects as if they had been raised in the
pleadings.”).

3.     Trial court’s ability to sign award for
attorney’s fees

Hot-Hed also argues that the award
of attorney’s fees was improper in this case because the final judgment,
including the award of attorney’s fees, was not signed by the judge who
presided over the trial.[9]  This argument is likewise unavailing.  The authority cited by Hot-Hed involved a situation
in which a second judge entered judgment after the first judge heard all of the
evidence during a bench trial.  See W.C. Banks, Inc. v. Team, Inc., 783
S.W.2d 783, 786 (Tex. App.—Houston [1st Dist.] 1990, no writ).  That case is distinguishable from the present
case.  Here, the trial was to a jury and
there were no facts that needed to be determined by the trial court before
entering judgment.

We overrule Hot-Hed’s second issue.

4.     Trial court’s obligation to file findings of
fact and conclusions of law

In its third issue, Hot-Hed argues
that the trial court erred in refusing its timely request pursuant to Texas Rule
of Civil Procedure 297 to issue findings of fact and conclusions of law on the
attorney’s fees award.  Safehouse argues
that the trial court was not required to enter findings of fact and conclusion
of law on this issue.  We agree.

Texas Rule of Civil Procedure 296 entitles
a party to request that a trial court file findings of fact and conclusions of
law “in any case tried . . . without a jury.” 
Tex. R. Civ. P. 296.  Rule 297 provides the deadlines for trial
courts to file its findings and conclusions. 
Tex. R. Civ. P. 297.  Those rules do not require the trial court in
this case to issue findings of fact and conclusions of law.  Here, the trial was to a jury.  Furthermore, there were no determinations of
fact that were required, as the parties stipulated the amount of reasonable and
necessary attorney’s fees.

We overrule Hot-Hed’s third issue.

5.     Safehouse’s entitlement to post-judgment
interest

          In
its third issue on cross-appeal, Safehouse argues that the trial court erred in
failing to specify an award of post-judgment interest in the judgment.  Hot-Hed contends that the award of
post-judgment interest is inappropriate because Safehouse is not entitled to
any attorney’s fees.  We have already
determined, however, that the trial court did not abuse its discretion in
awarding attorney’s fees.

The Texas Finance Code provides
that “[a] money judgment of a court in this state must specify the postjudgment
interest rate applicable to that judgment.” 
Tex. Fin. Code Ann. §
304.001 (Vernon 2006); see also Office of
Att’y Gen. of Tex. v. Lee, 92 S.W.3d 526, 528 (Tex. 2002) (per curiam) (holding
under predecessor statute that code “does not require, as a prerequisite for
accruing interest, that judgments specifically include an award of postjudgment
interest”); RAJ Partners, Ltd. v. Darco
Constr. Corp., 217 S.W.3d 638, 653 (Tex. App.—Amarillo 2006, no pet.)
(“[P]ostjudgment interest is mandated by statute, and is recoverable even if
the trial court’s judgment does not mention it.”).  Thus, Safehouse is entitled to post-judgment
interest at a rate of five percent compounded annually.  See Tex. Fin. Code Ann. § 304.003(c)(2)
(Vernon 2006) (providing that postjudgment interest rate is five percent per
year if prime rate as published by Board of Governors of Federal Reserve System
is less than five percent); id. §
304.006 (Vernon 2006) (providing that post-judgment interest compounds
annually).

          Accordingly,
we modify the judgment to clarify that Safehouse is entitled to post-judgment interest
by adding the following sentence:  Safehouse
shall also recover from plaintiffs, jointly and severally, post-judgment
interest at a rate of five percent, compounded annually.

          We
sustain Safehouse’s third issue on cross-appeal.

Charge Error 

In its fourth issue, Hot-Hed argues
that the trial court erred in declining to submit Hot-Hed’s proposed special
issue on statutory trademark infringement to the jury.

We review a trial court’s decision
to refuse an instruction in its charge for an abuse of discretion.  Dew v.
Crown Derrick Erectors, Inc., 208 S.W.3d 448, 456 (Tex. 2006).  “If an instruction might aid the jury in
answering the issues presented to them, or if there is any support in the
evidence for an instruction, the instruction is proper.”  Louisiana-Pacific
Corp. v. Knighten, 976 S.W.2d 674, 676 (Tex. 1998) (per curiam); see also Tex. R. Civ. P. 278 (addressing submission of questions,
definitions, and instructions to jury);
Dew, 208 S.W.3d at 456 (“A party is entitled to a jury question,
instruction, or definition if the pleadings and evidence raise an
issue.”).  A trial court’s error in
refusing an instruction is reversible, however, only if it “probably caused the
rendition of an improper judgment.”  Dew, 208 S.W.3d at 456; see also Tex. R. App. P. 44.1(a) (addressing reversible error in civil
cases).

Assuming, without deciding, that
Hot-Hed was entitled to submission of the charge in the form it requested,
Hot-Hed cannot show that any alleged error probably caused the rendition of an
improper judgment.  As we have already
concluded, the judgment was properly based on the jury’s conclusion that the
mark “habitat” is not eligible for trademark protection.  This was a threshold consideration to all of
Hot-Hed’s claims against Safehouse, and Hot-Hed has presented no evidence that
the jury might have decided that question differently had the charge not been
submitted in the conditional format used by the trial court.

We overrule Hot-Hed’s fourth issue.




 

Conclusion

          We
modify the judgment of the trial court in the following manner:

·       
We modify the trial court’s declaration to state
that “the term ‘habitat’ is not eligible as a trademark under Texas or Federal
law, namely the Lanham Act, Title 15 of the United States Code, when used in connection with welding
enclosures and any related accessories or items.”

·       
We add the following sentence following the above
sentence: “The Court orders that Hot-Hed’s Texas registration of the term
“habitat” when used in relation to inflatable welding enclosures is cancelled.”

·       
We add the following sentence following the award of
attorney’s fees and court costs: “Safehouse shall also recover from plaintiffs,
jointly and severally, post-judgment interest at a rate of five percent,
compounded annually.”

We affirm as modified.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Bland.

 











[1]           After it filed this suit, Hot-Hed
transferred its rights to the “Habitat” mark to Cinaruco International, S.A., a
Panamanian corporation and related entity also owned by Louis Wardlaw, and
Cinaruco granted Hot-Hed an exclusive license to use the “Habitat” mark in the
United States.  After the transfer,
Safehouse challenged Hot-Hed’s capacity to sue for trademark infringement
because of the assignment to Cinaruco. 
Cinaruco transferred the rights to the mark back to Hot-Hed.  Additionally, the second amended petition
added Cinaruco as a plaintiff.

 





[2]           Safehouse also alleged that Hot-Hed
attained its Texas trademark registration through fraud; however, Safehouse did
not seek entry of judgment on this issue and does not raise any arguments
regarding this cause of action on appeal.





[3]           Safehouse’s first amended answer and
counterclaim was filed March 27, 2008, and named only Hot-Hed as a
plaintiff.  Hot-Hed entered its second
amended petition adding Cinaruco as a plaintiff on April 21, 2008, and
Safehouse never filed another amended answer and counterclaim.





[4]           The stipulation was entered on the
record during trial by both sides as to the amount of reasonable and necessary
fees only.

 





[5]
          On May 20, 2009, Safehouse moved to modify or
reform the judgment, arguing that the trial court’s judgment should include the
order cancelling Hot-Hed’s Texas registration of “Habitat” and ordering the
dismissal or denial of the USPTO proceedings.

 





[6]           Hot-Hed does not challenge the jury’s
finding that the “habitat” mark was not eligible for protection in its first
issue.  However, in its argument
regarding the appropriateness of attorney’s fees, it contends that the evidence
was legally and factually insufficient because: 

 

[T]he record establishes
that (1) Hot-Hed was the first to use the “Habitat” mark to market inflatable
welding enclosures and has used the mark continuously for twenty years; (2)
Hot-Hed secured a federal registration for the same mark . . . ; (3) the Texas
Secretary of State concluded that Hot-Hed’s mark is eligible for protection, as
evidenced by the fact that Hot-Hed received a Texas registration; (4) the
district court denied Safehouse’s request for summary judgment, concluding that
the case presented a close enough question that resolution by a jury was
required; and (5) two of the jurors in this case agreed with Hot-Hed that its
mark was eligible for protection.

 

Therefore, we address the
legal and factual sufficiency of the evidence to support the jury’s finding in
this issue.





[7]           Hot-Hed did not obtain a federal
registration of the term “Habitat.” 
Therefore, we do not address the presumption under the federal statutory
scheme.





[8]           Suggestive and arbitrary or fanciful terms are
protectable without proof of secondary meaning. 
All Am. Builders, Inc. v. All Am.
Siding of Dallas, Inc., 991 S.W.2d 484, 489 (Tex. App.—Fort Worth 1999, no
pet.) (citing Union Nat’l Bank, Laredo v. Union Nat’l Bank, Austin, 909 F.2d 839,
844 (5th Cir. 1990) and
Zatarains, Inc. v. Oak Grove Smokehouse,
Inc., 698 F.2d 786, 790–91 (5th Cir. 1983)).  There is no suggestion in this case, however,
that the term “habitat” is suggestive, arbitrary, or fanciful.





[9]           The Hon. Levi Benton presided over the
trial, but left the bench before entering final judgment.  He was succeeded by the Hon. Steven
Strickland, who entered the final judgment.