CITY OF CARROLLTON,
Texas, Appellant,

v.

**RIHR INCORPORATED, Appellee.**

No. 05–08–01715–CV.

Court of Appeals of Texas,
Dallas.

March 18, 2010.

Rehearing Overruled April 26, 2010.

Fredrick Quast, Taylor, Olson, Adkins, Salla & Elam, L.L.P., Fort Worth, TX, for Appellant.

Richard B. Schiro, Law Office of Richard B. Schiro, Dallas, TX, for Appellee.

Before Justices MORRIS, O'NEILL and FILLMORE.

## OPINION

Opinion by Justice FILLMORE.

Appellee RIHR Incorporated, owner of two residential development lots in Carrollton, Texas, applied to appellant The City of Carrollton for building permits to complete construction of houses on those lots. Carrollton refused to issue those permits, demanding instead that RIHR first reimburse Carrollton for a portion of the city's cost to remediate a collapsed retaining wall on lots not owned by RIHR. Following a non-jury trial, the trial court signed a final judgment in favor of RIHR on its claim that Carrollton imposed an improper exaction as a condition to granting the requested building permits, thereby taking private property without providing adequate compensation. In three issues, Carrollton asserts the trial court erred in (i) concluding Carrollton engaged in an unlawful exaction, (ii) awarding damages to RIHR, and (iii) awarding attorney's fees to RIHR. We affirm in part, and reverse and render in part.

### Factual and Procedural Background

A 1993 plat recorded in Dallas County, Texas, depicts a subdivision known as Josey Park Estates consisting of fifty-five lots located in Carrollton. Carrollton–Farmers Branch Independent School District (CFBISD) purchased seven lots in Josey Park Estates (the CFBISD Property). After acquisition of the CFBISD Property, CFBISD had a retaining wall constructed on two of those lots, lots 17 and 18, along the western and southern boundaries of the CFBISD Property. The retaining wall was not required by or referred to in the original plat for Josey Park Estates.

In December 2002, after construction of the retaining wall was completed, Josey Park, L.P. purchased six of the seven lots from CFBISD in order to build houses on those lots (the Josey Park Lots). In 2003, Josey Park, L.P. replatted those six lots, as shown on the replat entitled "Lots 16R, 17R, 18R, 19R, 20R and 21R, Block A Josey Park Estates" recorded in Dallas County. As replatted, lots 17 and 18 became lots 17R and 18R. The retaining wall originally built on lots 17 and 18 was not shown or mentioned on the replat and was not a condition of or related in any way to Josey Park, L.P.'s obtaining approval of the replat from Carrollton. Carrollton issued building permits, and in early 2004, Josey Park, L.P. began construction of houses on lots 19R and 20R.

The retaining wall partially collapsed in June 2004, and Carrollton notified Josey Park, L.P. that the wall had failed and was a threat to life, safety, and the environment. Carrollton requested Josey Park, L.P. take action to, among other things, repair or remove the collapsed wall. In July 2004, Carrollton issued an official notice ordering that work on the houses on lots 19R and 20R cease and stating that no other building permits would be issued for the Josey Park Lots until the collapsed wall was removed or repaired by Josey Park, L.P. In January 2005, Carrollton issued to Josey Park, L.P. a corrected notice and order stating that the wall had been found to be a dangerous structure under the 1994 Uniform Code for the Abatement of Dangerous Buildings as adopted by Carrollton Ordinance 2233 and giving Josey Park, L.P. official notice to start repairs or begin demolition of the structure within thirty days. That notice and order identified the retaining wall as "the structure and premises located at" lots 17R and 18R of Josey Park Estates.

In February 2005, Carrollton's Construction Advisory and Appeals Board (CAAB) conducted a hearing regarding the collapsed retaining wall. At the hearing, an engineer employed by Carrollton stated that "the lots affected by the failure of the wall" were 17R, 18R, 19R, 20R and 21R. Following the hearing, CAAB issued an order stating that the wall was dangerous, substandard, dilapidated, and a hazard to the public health, safety, and welfare, and that it should be demolished or repaired. In reliance on the engineer's report, the order further provided that in accordance with Carrollton City Code No. 150.100, the expense of demolition and stabilization performed under contract with Carrollton or by Carrollton would constitute a nontransferable lien against lots 17R, 18R, 19R, 20R, and 21R.

At a public foreclosure sale in April 2005, RIHR purchased lots 19R and 20R (RIHR Lots). In May 2005, RIHR applied for building permits to complete construction of the houses on the RIHR Lots, paid the required permit fees, and registered as a general contractor in Carrollton in order to obtain the building permits. Notwithstanding RIHR's submission of proper applications and payment of the required fees, Carrollton refused to issue the requested building permits and informed RIHR that the permits would not be issued until the wall was repaired or removed by RIHR. In June 2005, RIHR attempted to appeal to CAAB, requesting an order for issuance of the building permits to complete the houses and directing Carrollton to assess the cost of repairing the wall only to those lots on which the wall had been constructed, Josey Park Lots 17R and 18R. Carrollton refused to accept RIHR's application for appeal. In September 2005, Carrollton's Director of Engineering communicated the following to Carrollton's Assistant City Manager:

> Staff plans to put liens on all 6 properties [of the Josey Park Lots] in hopes of recouping our cost. However, as I mentioned before and I believe I stated this to Council when they approved this item, it is likely that the property owner(s) will simply walk away from this and leave the property as is.... The only lots where the city may recoup some of its investment [the remediation expense] is [sic] the two lots that have homes [the RIHR Lots].

In 2006, Carrollton remediated the damage caused by the wall's collapse by having the collapsed portions of the wall removed or replaced and having portions of some of the Josey Park Lots graded to eliminate the need for a retaining wall. None of this remediation occurred on the RIHR Lots.

This remediation work was completed in May 2006 and was paid for by Carrollton.

RIHR contacted Carrollton in July 2006 to inquire whether Carrollton would issue the requested building permits for completion of the residential construction on the RIHR Lots. Carrollton responded that before it would issue permits, RIHR was required, among other things, to sign an agreement with Carrollton stating in part that the retaining wall was required as part of the platting process and to pay Carrollton the sum of $40,121, one-third of the remediation cost as allocated by Carrollton to the RIHR Lots.

RIHR filed suit against Carrollton alleging an unconstitutional taking and seeking temporary and permanent injunctive relief, damages, and a declaratory judgment. After a hearing, the trial court signed an order for temporary injunction. The trial court found that the collapsed retaining wall was not on and did not affect the lots owned by RIHR, and Carrollton's "existing and continuing refusal to issue the building permits unless and until RIHR reimburses or pays the City for remediation of the collapsed Wall is an unconstitutional taking." The temporary injunction compelled Carrollton to approve RIHR's application for building permits, issue those building permits, release by duly recorded instruments the liens filed by Carrollton against the RIHR Lots, and consider, without reimbursement by RIHR of remediation costs relating to the retaining wall, RIHR's application for a permit to construct a driveway on the access easement adjacent to the RIHR Lots. Carrollton issued the building permits on May 7, 2007.[1] The construction necessary to complete the houses on lots 19R and 20R

commenced in June 2007 and was completed in November 2007.[2]

The case was tried before the court without a jury. The trial court found in favor of RIHR and signed a final judgment awarding RIHR $119,200.15 in damages and $69,752.87 for attorney's fees. The trial court filed findings of fact and conclusions of law. Carrollton appealed the judgment.

### Exaction

■ In its first issue, Carrollton asserts the trial court erred in concluding there was an unconstitutional exaction resulting in a taking of RIHR's property. Carrollton asserts no exaction occurred because (1) Carrollton abandoned the conditions about which RIHR complains and issued the requested building permits for lots 19R and 20R, and (2) RIHR did not ultimately pay Carrollton any portion of the cost of wall remediation.

Whether particular facts constitute an unconstitutional taking of property is a question of law subject to de novo review. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 937 (Tex.1998). Accordingly, we will examine the trial court's conclusions of law under a de novo standard. *See Piazza v. City of Granger,* 909 S.W.2d 529, 532 (Tex.App.-Austin 1995, no writ). We will uphold a trial court's conclusion of law unless it is erroneous as a matter of law. *See id.*

■ A prohibition against taking private property for public use without just compensation is set forth in Article I, section 17 of the Texas Constitution, which provides that "[n]o person's property shall be taken, damaged, or destroyed for or ap-

---

1. There was no permanent injunction because Carrollton issued the requested building permits.

2. According to RIHR's January 17, 2008 trial brief, the houses were still for sale at the time of trial.

plied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17. *See Mayhew,* 964 S.W.2d at 933. The Just Compensation Clause of the Fifth Amendment to the United States Constitution, applied to the individual states through the Fourteenth Amendment, contains similar language. It provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amends. V, XIV. As a result, Texas courts typically look to federal cases for guidance on the constitutionality of a taking. *See Sheffield Dev. Co. v. City of Glenn Heights,* 140 S.W.3d 660, 669 (Tex. 2004).

 Takings are classified as either physical or regulatory. *Mayhew,* 964 S.W.2d at 933; *Sefzik v. City of McKinney,* 198 S.W.3d 884, 891 (Tex.App.-Dallas 2006, no pet.). A physical taking is an unwarranted physical appropriation or invasion of the property. *Mayhew,* 964 S.W.2d at 933. A compensable regulatory taking can occur when a governmental entity imposes restrictions that either deny a property owner all economically viable use of his property or unreasonably interfere with the owner's right to use and enjoy the property. *Id.* at 935.

 A distinct category of regulatory taking occurs when the government conditions the approval of a permit or some other type of governmental approval on an exaction from the approval-seeking landowner. *See Lingle v. Chevron U.S.A.,*

*Inc.,* 544 U.S. 528, 548, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005) (referring to "land-use exaction" taking theory); *Dolan v. City of Tigard,* 512 U.S. 374, 377, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (permit to expand store and parking lot conditioned on dedication of portions of property for greenway and bicycle and pedestrian pathway); *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 827, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) (permit to build larger residence on beachfront property conditioned on dedication of easement allowing public to traverse strip of property). Specifically, an exaction occurs if a governmental entity requires an action by a landowner as a condition to obtaining governmental approval of a requested land development. *Town of Flower Mound v. Stafford Estates, L.P.,* 71 S.W.3d 18, 30 (Tex.App.-Fort Worth 2002), *aff'd,* 135 S.W.3d 620, 630 (Tex.2004) (citing *Dolan,* 512 U.S. at 377, 114 S.Ct. 2309 and *Nollan,* 483 U.S. at 827, 107 S.Ct. 3141).[3]

Here, Carrollton required RIHR to pay a portion of the wall remediation cost as a condition precedent to Carrollton's approval of RIHR's application for building permits for lots 19R and 20R. In its findings of fact, the trial court found that: lots 16R–21R of Josey Park Estates were platted before construction of a retaining wall running along the western and southern boundaries of lots 17R and 18R, and construction of the retaining wall was not a condition for the platting; the wall does not touch, abut or run along lots 19R and

---

3. We disagree with Carrollton's assertion that this case is more appropriately analyzed under *Penn Central Transportation Company v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). As was stated in *Sefzik:*

> The [*Flower Mound*] court specifically distinguished cases involving the "unreasonable regulatory interference" analysis employed in *Penn Central* from cases like

*Nollan* and *Dolan,* which involved "exactions imposed by the government as a condition of its approval of land development...." [T]his case is a development exaction takings case, not a regulatory interference takings case. Therefore, the tests stated in *Penn Central* and *Mayhew* do not apply here.

*Sefzik,* 198 S.W.3d at 898–99.

20R; the wall and its failure had no effect on lots 19R and 20R; Carrollton's basis for denying RIHR's application for the building permits was RIHR's not reimbursing or paying Carrollton for remediation of the collapsed wall; and, Carrollton imposed an exaction as a condition to obtain its approval of the building permits.

These findings establish there was an ultimatum by Carrollton that RIHR pay a portion of the collapsed wall's remediation cost as a condition precedent to issuance of the requested building permits, even though the wall had no impact on or benefit to the RIHR Lots, either as the wall previously existed or as remediated. The wall was built prior to commencement of construction on the houses on the RIHR Lots and was not ever a condition precedent in any respect for that construction. Carrollton imposed the remediation cost and liens against lots 19R and 20R to recoup a portion of its expenses.

Based on the evidence, the trial court concluded that Carrollton's refusal to issue the building permits unless and until RIHR reimbursed or paid Carrollton for remediation of the collapsed wall was an unconstitutional exaction. The trial court further concluded that the liens filed by Carrollton against lots 19R and 20R were an improper and unlawful attempt to enforce that unconstitutional exaction.

Carrollton contends it only threatened an exaction. It asserts that no exaction occurred because the condition for issuing building permits was not enforced and because the building permits for lots 19R and 20R were granted without a payment from RIHR for a portion of the wall remediation costs. The record indicates that without the temporary injunction order requiring Carrollton to issue the building permits, Carrollton would have continued to deny the building permits unless and until RIHR paid Carrollton a portion of the wall remediation cost. Contrary to Carrollton's assertion, the record establishes that the condition was enforced; the building permits were issued by Carrollton only after and because the trial court's mandatory injunction order required Carrollton to do so.[4] *See City of Houston v. Kolb,* 982 S.W.2d 949, 955 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (record indicated city would continue to deny proposed subdivision plat until landowners agreed to give city a portion of their property for right-of-way).

Essentially Carrollton argues that because RIHR sought redress from the trial court prior to paying Carrollton's demand for reimbursement of the wall remediation cost, no exaction occurred. Carrollton has pointed to no case requiring the landowner to acquiesce in the required action or condition prior to seeking redress in the trial court for an unlawful exaction.[5] We have found no such controlling authority.[6] Fur-

---

4. Carrollton did not appeal the temporary injunction order.

5. In *Flower Mound,* the court disagreed with the town's argument that the court should "adopt a standard that requires developers to seek to strike down conditions that they believe are unconstitutional before accepting the conditions and irreparably changing the status quo." *Flower Mound,* 135 S.W.3d at 628. The court stated, "[t]here is nothing in the statutory framework [regarding municipal regulation of subdivisions and property development] to suggest that the time for bringing

an action like this one is constrained by anything other than the applicable statute of limitations...." *Id.* at 628–29.

6. Although the *Dolan* majority did not expressly address the argument that an exaction claim is not cognizable when the landowner refuses to agree to an improper request from the government resulting in denial of the permit, the argument was addressed by the dissent and, thus, implicitly rejected by the majority. *Dolan,* 512 U.S. at 408, 114 S.Ct. 2309 (Stevens, J., dissenting). The argument was also addressed and rejected in *Parks v. Wat-*

ther, Carrollton's argument ignores the definition of exaction as set out in *Flower Mound.* An exaction occurs if the governmental entity requires an action by the landowner as a condition to obtaining governmental approval of the requested land development. *Flower Mound,* 135 S.W.3d at 630. In accord, Black's Law Dictionary defines an "exaction" as "1. The *act* of demanding more money than is due; extortion. 2. A fee, reward, or other compensation arbitrarily or wrongfully *demanded.*" BLACK'S LAW DICTIONARY 641 (9th ed.2009) (emphasis added). Here, Carrollton demanded that RIHR pay a portion of the wall remediation cost as a condition precedent to Carrollton's approving RIHR's application for building permits. Carrollton's demand falls squarely within the definition of "exaction."

The United States Supreme Court utilizes a two-prong test to determine whether a compensable taking has occurred when the government conditions the granting of permit approval, plat approval, or some other type of governmental approval on an exaction from the party seeking the approval. *Dolan,* 512 U.S. at 391, 114 S.Ct. 2309; *see also Nollan,* 483 U.S. at 837, 107 S.Ct. 3141 (applying the first prong of the two-prong test articulated in *Dolan* ). The two prongs of this test, referred to as "essential nexus" and "rough proportionality," were adopted, applied and explained by the Texas Supreme Court in *Flower Mound:*

> [C]onditioning government approval of a development of property on some exaction is a compensable taking unless the condition (1) bears an essential nexus to the substantial advancement of some legitimate government interest and (2) is

roughly proportional to the projected impact of the proposed development.

*Flower Mound,* 135 S.W.3d at 634.

■ The government must make an "individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Id.* at 633 (citing *Dolan,* 512 U.S. at 389–91, 114 S.Ct. 2309). Thus, the burden is on the government to prove that the condition imposed meets the test. *Id.* at 643–44; *Sefzik,* 198 S.W.3d at 891.

With regard to the first prong of the *Dolan* test, Carrollton did not demonstrate that an "essential nexus" existed between a legitimate government interest and the permit condition exacted. Even if the collapsed wall presented a condition adverse to public safety and Carrollton properly acted to eliminate the danger by remediating lots in which RIHR had no interest, there is no connection between remediation of the collapsed wall and Carrollton's exaction. The trial court found the collapsed wall was not on and did not affect the RIHR Lots. The record also reveals Carrollton's Director of Engineering believed it would be difficult to recoup wall remediation costs from the owner of the lots on which the wall was located and the remediation efforts occurred. The Director concluded that "[t]he only lots where the city may recoup some of its investment is [sic] the two lots that have homes [the RIHR Lots]." Based on the record before us, the exaction at issue was not related to and justified by the anticipated construction on the RIHR Lots.

Our analysis properly concludes with the first prong of the *Dolan* test and the sole test applied in *Nollan.* In other words, having determined that the exaction imposed by Carrollton was not related to a

---

son, 716 F.2d 646 (9th Cir.1983), a case upon which the Supreme Court relied in deciding

*Nollan.* *See Nollan,* 483 U.S. at 839, 107 S.Ct. 3141; *Parks,* 716 F.2d at 652.

legitimate government interest, we need not consider whether the exaction is roughly proportional to the projected impact of the proposed development. However, we note with regard to the "rough proportionality" prong of the *Dolan* test that Carrollton did not attempt to demonstrate a correlation between the wall remediation payment demanded from RIHR and the impact of the requested residential construction on lots 19R and 20R.

On this record, the trial court did not err in concluding that Carrollton's refusal to issue building permits unless RIHR provided funding for wall remediation is an unconstitutional exaction. We overrule Carrollton's first issue.

### Damages Awarded

■ In its second issue, Carrollton asserts that the trial court applied an improper measure of damages. Whether the trial court applied an improper measure of damages is a question of law subject to a de novo review. *Allied Vista, Inc. v. Holt,* 987 S.W.2d 138, 141 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

Carrollton also contends there is no evidence of the reasonableness of payments RIHR made to third parties. An appellant attacking the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof must show there is no evidence to support the adverse finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). We view the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). Anything more than a scintilla of evidence is legally sufficient to support a challenged finding of fact. *OAIC Commercial Assets v.*

*Stonegate Village, L.P.,* 234 S.W.3d 726, 736 (Tex.App.-Dallas 2007, pet. denied).

The trial court concluded that RIHR was harmed by the exaction because it could not complete construction of the houses on lots 19R and 20R until the building permits were issued. Having concluded that a compensable injury occurred, the trial court further concluded that RIHR was entitled to recover necessary expenses associated with its ownership of the partially constructed houses for the exaction period (from Carrollton's improper refusal to issue the building permits, mid-May 2005, through issuance of the building permits, May 7, 2007). Carrollton asserts the damages awarded by the trial court constituted an improper measure of damages. We disagree.

Carrollton concedes there are differing measures of damages depending on the circumstances of the temporary loss of use of property. *See City of Austin v. Teague,* 570 S.W.2d 389, 392 (Tex.1978); *Hall v. Robbins,* 790 S.W.2d 417, 418 (Tex.App.-Houston [14th Dist.] 1990, no writ); *United States v. Lee,* 360 F.2d 449, 452 (5th Cir.1966). Carrollton also concedes there is authority for the proposition that "necessary expenditures" are appropriately recovered to compensate for loss of use. *See Betts v. Reed,* 165 S.W.3d 862, 872–73 (Tex.App.-Texarkana 2005, no pet.) (affirmed trial court's award of out-of-pocket expenses based on denial of access and loss of use of real property, including deer lease, additional time for employees traveling longer route, and personal time for owner's alternative route); *San Antonio River Auth. v. Garrett Bros.,* 528 S.W.2d 266, 274 (Tex.Civ.App.-San Antonio 1975, writ ref'd n.r.e.) (for temporary taking or damage, landowner entitled to recover such sum as would compensate for loss of profits and necessary expenditures); *see also Hart Bros. v. Dallas County,* 279

S.W. 1111, 1112 (Tex. Comm'n App.1926, judgm't adopted).

Carrollton relies on *Hall* for the argument that real estate taxes and accrued interest on a purchase money mortgage are not proper measures of damages for a temporary taking. In *Hall*, property owners brought an action to enjoin neighbors from interfering with access to their land and for compensation for the time the property owners were prevented from developing their property. *Hall*, 790 S.W.2d at 417. As here, the evidence the *Hall* plaintiffs presented related to accrued real estate taxes and accrued interest on the purchase money mortgage. *Id.* at 418. The trial judge determined that loss of the use of the property was the proper measure of damages under those circumstances. *Id.* The court of appeals affirmed, holding there was no evidence of loss of use before the court. *Id.* at 419.

*Hall* is distinguishable from the case at bar. In *Hall*, the land at issue was undeveloped, vacant land. *Id.* at 417, 419. Here, the property temporarily taken was not raw, undeveloped land. Each of the two lots at issue contained a residence on which construction was approximately ninety percent complete. After purchase of lots 19R and 20R, RIHR was unable to complete construction of the homes until the building permits were issued by Carrollton. RIHR seeks compensation for time-related expenses incurred during the period the building permits were withheld by Carrollton. Based on the facts and circumstances of this case, we conclude that the trial court properly determined that RIHR's out-of-pocket expenses incurred during the exaction period constituted an appropriate measure of damages.

 Having concluded the trial court properly applied the measure of damages

to the particular facts of this case, we next address Carrollton's argument that there is no evidence of the reasonableness of the damages.[7]

RIHR presented evidence concerning four categories of out-of-pocket expenditures it incurred during the exaction period: bank interest on notes collateralized by the houses on lots 19R and 20R, insurance premiums, real estate taxes, and miscellaneous maintenance items including mowing liens and repairs for the houses on lots 19R and 20R. The trial court found the following damages "reasonable and necessary as provided by the evidence and all reasonable inferences therefrom": $30,449.24 for taxes and mowing liens paid by RIHR during the time building permits were withheld by Carrollton; $70,939.63 for interest paid on interest-only bank notes as shown on bank statements; and, $17,811.28 paid for insurance premiums for insurance on the houses on lots 19R and 20R. The trial court's conclusions of law with regard to each of those damage amounts provide that RIHR met its burden of proof and that the trial court can take judicial notice with regard to each of those amounts. The trial court awarded RIHR $119,200.15 as damages for the unconstitutional exaction.

Michael Coker, president of RIHR, testified with regard to the damages sought by RIHR and to the spreadsheet and backup documents admitted in evidence at trial in support of RIHR's damage claim. Carrollton acknowledges RIHR's damage evidence contains "very thorough documentation." Carrollton did not examine RIHR's witness regarding the damages claimed or otherwise make an effort to disprove RIHR's just compensation evidence. "To the extent evidence supporting the damage award was not controverted, it

7. Carrollton has not challenged the calculation of RIHR's damages.

is sufficient." *Foust v. Estate of Walters,* 21 S.W.3d 495, 509 (Tex.App.-San Antonio 2000, pet. denied).

The evidence conclusively established that RIHR was not able to complete construction of the houses of lots 19R and 20R for the period of the exaction. RIHR presented more than a scintilla of evidence regarding its expenditures incurred during the exaction period, and that evidence supports the trial court's findings concerning damages. Property taxes, interest on the mortgage note, insurance premiums, and expenses associated with maintenance and repair while awaiting building permits to complete construction were all attendant to RIHR's ownership of the RIHR Lots.

Having reviewed the record and arguments presented, we cannot conclude the trial court erred in finding these expenses reasonable and necessary. We overrule Carrollton's second issue.

### Attorney's Fees

In this lawsuit, RIHR asserted entitlement to a declaratory judgment and to recovery of attorney's fees under the Uniform Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.003, .009 (Vernon 2008). In a declaratory judgment action, a "court may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id.* at § 37.009. The trial court found that RIHR incurred reasonable and necessary attorney's fees in the amount of $69,752.87 through April 7, 2007, the date of issuance of the temporary injunction, and concluded RIHR is entitled to recover attorney's fees in that amount under a just and equitable standard.

In its third issue, Carrollton contends the trial court erred in awarding RIHR attorney's fees. Carrollton does not contest the reasonableness of the attorney's fees. Rather, Carrollton asserts the trial

court's award of attorney's fees under the Uniform Declaratory Judgments Acts was error because, in an effort to obtain attorney's fees, RIHR utilized a declaratory judgment action to seek the same relief requested under its cause of action against Carrollton for an unconstitutional taking.

We review for abuse of discretion a trial court's award of attorney's fees under the Uniform Declaratory Judgments Act. *Ridge Oil Co. v. Guinn Invs., Inc.,* 148 S.W.3d 143, 163 (Tex.2004). "The trial court abuses its discretion if its ruling that attorney's fees were recoverable was arbitrary or unreasonable." *Cadle Co. v. Harvey,* 46 S.W.3d 282, 289 (Tex.App.-Fort Worth 2001, pet. denied).

A party cannot use the Uniform Declaratory Judgments Act to obtain an otherwise impermissible attorney's fee. *MBM Fin. Corp. v. Woodlands Operating Co.,* 292 S.W.3d 660, 669 (Tex.2009). It is an abuse of discretion to award attorney's fees under the Uniform Declaratory Judgments Act when the statute is relied upon solely as a vehicle to recover attorney's fees. *Tex. State Bd. of Plumbing Exam'rs v. Assoc. Plumbing–Heating–Cooling Contractors of Tex., Inc.,* 31 S.W.3d 750, 753 (Tex.App.-Austin 2000, pet. dism'd); *see also City of Houston v. Texan Land & Cattle Co.,* 138 S.W.3d 382, 392 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (party may not use declaratory judgment action to seek same relief afforded under another of its causes of action to obtain otherwise impermissible attorney's fees).

RIHR asserts its declaratory judgment claim is an appropriate remedy because RIHR has an actual, justiciable issue concerning whether its constitutional rights have been violated, and the trial court could resolve that issue with a declaration that Carrollton's refusal to issue building permits unless RIHR paid for remediation

of the collapsed wall was an unconstitutional exaction. Therefore, RIHR asserts the plea for declaratory relief has a purpose apart from seeking attorney's fees.

RIHR's amended petition was filed after the trial court signed the temporary injunction order requiring Carrollton to, among other things, approve RIHR's application for building permits, issue those building permits, and release the liens against the RIHR Lots. In its amended petition, RIHR asserted a cause of action for damages resulting from an unconstitutional taking. RIHR also sought a declaratory judgment that Carrollton's denying the building permits to RIHR until ordered to do so by the trial court was an unconstitutional taking and Carrollton's liens against the RIHR Lots for the costs associated with remediating the collapsed wall were improper and unlawful. Here, the declaratory action had no greater ramifications than RIHR's cause of action for a compensable taking and merely duplicated the issues already before the trial court. Other than attorney's fees, RIHR sought no relief under the declaratory judgment pleading not associated with its cause of action alleging a compensable taking.

RIHR's declaratory action claims were subsumed within its cause of action against Carrollton for a compensable taking, and RIHR's use of the declaratory judgments statute was an improper vehicle for obtaining its attorney's fees. We conclude the trial court abused its discretion in awarding RIHR attorney's fees under the Uniform Declaratory Judgments Act. We sustain issue three as to RIHR's attorney's fees and reverse the trial court's award of attorney's fees to RIHR.

### Conclusion

We reverse the award of attorney's fees and render judgment that RIHR take nothing on its claim for attorney's fees. In all other respects, the trial court's judgment is affirmed.