**REVERSE, RENDER, and AFFIRM; and Opinion Filed July 15, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00246-CV

### CELLULAR SALES OF KNOXVILLE, INC., Appellant

### V.

### MARTIN E. MCGONAGLE, Appellee

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-02647**

## MEMORANDUM OPINION
Before Justices Lang-Miers, Myers, and Lewis
Opinion by Justice Lang-Miers

Appellee Martin E. McGonagle as landlord and appellant Cellular Sales of Knoxville, Inc. as tenant were parties to a commercial lease. A jury found that McGonagle "fail[ed] to comply with the Lease Agreement by failing to make access to the premises leased by Cellular Sales ADA compliant" and awarded Cellular Sales $30,242 in damages. The jury also found that the amount of reasonable attorney's fees for Cellular Sales was $57,500 and additional attorney's fees through appeal and that the amount of reasonable attorney's fees for McGonagle was $23,000 and additional attorney's fees through appeal. The trial court (1) granted McGonagle's motion for judgment notwithstanding the verdict as to his liability, Cellular Sales's damages, and Cellular Sales's attorney's fees and (2) granted Cellular Sales's motion for

judgment notwithstanding the verdict as to McGonagle's attorney's fees. The judgment ordered that both parties would take nothing.

We reverse the portion of the trial court's judgment that granted McGonagle's motion for judgment notwithstanding the verdict, and reinstate and render judgment in accordance with the jury's findings on McGonagle's liability, $30,242 in damages to Cellular Sales, and $57,500 for Cellular Sales's attorney's fees in the trial court and additional attorney's fees through appeal. We affirm the portion of the judgment granting Cellular Sales's motion for judgment notwithstanding the verdict concerning McGonagle's attorney's fees. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4.

## BACKGROUND

In May 2010, Cellular Sales and McGonagle agreed to a lease for retail space. The lease defined "Demised Premises" as "a store unit in the Shopping Center which is deemed to contain approximately 3,047 square feet in area, located at 3323 Oak Lawn Avenue, Dallas, Texas 75219, and being described or shown on Exhibit 'A' attached to this Lease." Section 6.1 of the lease stated:

> The term "Common Area" is defined for all purposes of this Lease as that part of the Shopping Center intended for the common use of all tenants, including among other facilities . . . parking areas, private streets and alleys, . . . curbs, loading area, sidewalks, malls and promenades[.]

Section 6.3 of the lease provided that McGonagle, as landlord, "shall be responsible for the operation, management and maintenance of the Common Area, the manner of maintenance and the expenditures therefore to be in the sole discretion of Landlord, but to be generally in keeping with similar shopping centers within the same geographic area as the Shopping Center."

In addition, section 8.10 of the lease provided that "Tenant shall be responsible for compliance with the Americans with Disabilities Act of 1990, as amended from time to time (the 'ADA'), and related state and municipal laws and regulations, including without limitation the

–2–

Texas Accessibility Standards ('TAS') . . . in all matters regarding both the configuration of the Demised Premises (the interior as well as all public and/or employee door entrances) and Tenant's business operations at the Demised Premises." Cellular Sales leased the premises "in 'AS IS' condition" and agreed that McGonagle "shall not be obligated to perform any construction, remodeling work, or other improvements of any kind in connection with Tenant's commencement and/or operation of business in the Demised Premises[.]" In June 2010, McGonagle and Cellular Sales agreed to a first amendment to the lease that generally contained the same "as is" provision and likewise generally provided that McGonagle would not be obligated to make improvements in connection with Cellular Sales's commencement and operation of business in the Demised Premises.[1]

The City of Dallas would not give Cellular Sales a certificate of occupancy to begin business operations in the Demised Premises until the property complied with the ADA, which required handicap accessible ramps leading to the front and back of the store to be built and the front parking lot to be re-striped for handicap parking. Cellular Sales asked McGonagle to make these changes but McGonagle refused. Cellular Sales contracted with third parties and paid them $30,242 to construct and install the required ramps and re-stripe the parking lot.

Cellular Sales sued McGonagle for breach of contract, quantum meruit, and money had and received seeking actual damages, lost profits, and attorney's fees. Cellular Sales's breach of contract claim alleged that "[d]espite Plaintiff's full performance, Defendant has failed to comply with its obligations under the lease, namely its obligation to operate and maintain the Leased Premises' Common Areas." Cellular Sales also asked for attorney's fees under chapter 38 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001

---

[1] An exhibit to the lease and the first amendment stated certain improvements that McGonagle was required to make prior to the commencement of the lease that are not applicable here.

(West 2008). McGonagle filed a general denial with numerous affirmative defenses and asked for attorney's fees. In his first amended answer, McGonagle also asked for declaratory relief.[2]

The court submitted only Cellular Sales's breach of contract claim to the jury. The jury found that McGonagle "fail[ed] to comply with the Lease Agreement by failing to make access to the premises leased by Cellular Sales ADA compliant[,]" Cellular Sales's damages were $30,242, and Cellular Sales's reasonable attorney's fees were $57,500 and an amount for additional attorney's fees through appeal. The jury also found that McGonagle's reasonable attorney's fees were $23,000 and an amount for additional attorney's fees through appeal.

McGonagle filed a motion for judgment notwithstanding the verdict asking the court to disregard the verdict against him and Cellular Sales filed a motion for entry of final judgment asking the court to enter judgment based on the verdict against McGonagle and a motion for judgment notwithstanding the verdict asking the court to disregard the verdict concerning McGonagle's attorney's fees. The trial court granted McGonagle's motion for judgment notwithstanding the verdict and also granted Cellular Sales's motion for judgment notwithstanding the verdict, resulting in a take nothing judgment for both parties. Cellular Sales and McGonagle both appeal the trial court's judgment.

### WAS THE GRANT OF JUDGMENT NOTWITHSTANDING THE VERDICT TO MCGONAGLE ON LIABILITY AND DAMAGES PROPER?

In two issues, Cellular Sales argues that the trial court erred in denying its motion for entry of judgment and in granting McGonagle's motion for judgment notwithstanding the verdict setting aside the jury's verdict against McGonagle.

---

[2] Issue two below concerns McGonagle's request for declaratory judgment and attorney's fees.

## Standard of Review and Applicable Law

A trial court may disregard a jury's finding and grant a motion for judgment notwithstanding the verdict when there is no evidence to support the jury's finding. TEX. R. CIV. P. 301; *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.*, 393 S.W.3d 492, 515 (Tex. App.—Dallas 2013, pet. denied). We review a trial court's decision to grant a judgment notwithstanding the verdict under the legal sufficiency standard of review. *Helping Hands Home Care*, 393 S.W.3d at 515. We credit evidence favoring the jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009); *see City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005). If more than a scintilla of competent evidence supports the jury's finding, we will uphold it. *Tanner*, 289 S.W.3d at 830. To uphold the trial court's judgment notwithstanding the verdict, the party supporting the judgment was required to show that there was no evidence to support the jury's findings. *See id.*

## Arguments of the Parties

### Cellular Sales's Arguments

Cellular Sales argues that the lease was unambiguous and that, as a matter of law, McGonagle breached the lease because he did not make the leased premises ADA compliant and did not adequately operate, manage, and maintain the Common Area as required by section 6.3 of the lease. Cellular Sales also argues that the evidence at trial was sufficient to uphold the jury's verdict and that McGonagle did not demonstrate that there was not at least a scintilla of evidence to support the jury's verdict.

Cellular Sales argues that the Demised Premises was only the interior area that Cellular Sales leased from McGonagle and that the Demised Premises and the Common Area were "defined separately" in the lease: Common Area included parking areas, curbs, loading area, and

sidewalks and excluded "space in buildings (now or hereafter existing) designated for rental for commercial purposes[.]" Cellular Sales's regional manager, Jeff Bowers, and former construction manager, Chris Warwick, both testified that the Demised Premises was the area from the front threshold of Cellular Sales's store to the rear threshold of the store. Cellular Sales contends that the area outside the space that Cellular Sales leased from McGonagle—which was where the construction at issue took place—was part of the Common Area.

Cellular Sales contends that McGonagle's discretion to determine how to maintain the Common Area did not allow him to shift the responsibilities for operation, management, and maintenance of the Common Area to his tenants and section 6.3 limited his discretion by requiring that he maintain the Common Area consistent with other similar shopping centers, which included compliance with the ADA. Additionally, it argues that section 8.10 was in a part of the lease entitled "Use and Care of Demised Premises" and provided that Cellular Sales was responsible for complying with the ADA in the Demised Premises, not the Common Area. It also contends that McGonagle's argument that Cellular Sales leased the Demised Premises "as is" under section 3.1 does not apply to the Common Area.

Cellular Sales argues that McGonagle admitted during trial that the work was done in the Common Area and not in the Demised Premises, that all of the damages it sought were for work McGonagle refused to complete in the Common Area,[3] and that there was no evidence disputing Cellular Sales's evidence concerning the amount of costs that Cellular Sales incurred in making the needed repairs and that the jury awarded to Cellular Sales.

---

[3] Cellular Sales notes that it spent over $150,000 to make the Demised Premises ADA compliant but that it did not ask McGonagle to pay for the work to the Demised Premises.

**McGonagle's Arguments**

McGonagle argues that there is no evidence that McGonagle did not comply with the lease because the lease did not require him to "make the premises leased by Appellant ADA compliant." McGonagle relies on section 8.10 of the lease and contends that the lease "clearly and unambiguously provides" that Cellular Sales was responsible for complying with the ADA and similar laws both for purposes of the configuration of the Demised Premises and of Cellular Sales's business operations at the Demised Premises. McGonagle argues that Cellular Sales sued him "for matters regarding its business operations and for matters which are clearly stated to be the responsibility of" Cellular Sales.

McGonagle also states that both parties stipulated on the record that the contract was not ambiguous and, as a result, the trial court correctly construed the contract as a matter of law and granted McGonagle's judgment notwithstanding the verdict.

In addition, McGonagle contends that Cellular Sales "misapplies the facts" by relying on a portion of section 6.3 to establish that the lease required McGonagle to make the repairs. McGonagle stresses that section 6.3 states "Landlord shall be responsible for the operation, management and maintenance of the Common Area, the manner of maintenance and the expenditures therefore to be in the sole discretion of Landlord[.]" And McGonagle contends that he was responsible for maintenance of the Common Area and "[n]ew construction is not maintenance." McGonagle cites *Lewis v. Vitol, S.A.* for the propositions that "sole discretion" is defined as "[a]n individual's power to make decisions without anyone else's advice or consent" and that a contract provision that provides for an action to be in a party's sole discretion does not create a contractual entitlement for the other party. No. 01-05-00367-CV, 2006 WL 1767138, at *5 (Tex. App.—Houston [1st Dist.] June 29, 2006, no pet.) (mem. op.) (quoting BLACK'S LAW DICTIONARY 499 (8th ed. 2004)).

McGonagle also argues that the lease "clearly and unambiguously provides" that Cellular Sales leased the premises "as is" and that McGonagle was not required to make any improvements of any kind in connection with Cellular Sales's commencement or operation of business in the premises.[4]

**Analysis**

**Liability**

At trial, the sole liability question submitted to the jury was whether "McGonagle fail[ed] to comply with the Lease Agreement by failing to make access to the premises leased by Cellular Sales ADA compliant[.]" The evidence before the jury included the lease and the first amendment to the lease. The lease defined the Demised Premises to be a store unit in a shopping center comprising approximately 3,047 square feet. The Common Area under the lease was "that part of the Shopping Center intended for the common use of all tenants" and included "parking areas . . . curbs, loading area, sidewalks, malls and promenades[.]" Section 6.3 of the lease provided that McGonagle, as landlord, "shall be responsible for the operation, management and maintenance of the Common Area" and that he had "sole discretion" to determine "the manner of maintenance and the expenditure therefore" but that it was "to be generally in keeping with similar shopping centers within the same geographic area as the Shopping Center." Section 8.10 stated that Cellular Sales "shall be responsible for compliance with the Americans with Disabilities Act of 1990 . . . in all matters regarding both the configuration of the Demised Premises (the interior as well as all public and/or employee door entrances) and Tenant's business operations at the Demised Premises."

---

[4] McGonagle quotes the deposition testimony of Cellular Sales's "corporate representative" Christopher Warwick who stated that Cellular Sales knew that it was leasing the premises "as is" which meant Cellular Sales accepted "the demise[d] premises in its current condition at the time of signing." In response, citing *Johnson by Johnson v. Li*, 762 S.W.2d 307, 308 (Tex. App.—Fort Worth 1988, writ denied), Cellular Sales argues that Warwick's deposition is not properly before this Court because it was not introduced into evidence at trial and made a part of the transcript.

In addition, the lease provided that—with the exception of certain specified work that McGonagle agreed to perform (that is not at issue here)—Cellular Sales accepted the Demised Premises in "AS IS, WHERE AS" condition and that McGonagle would "not be obligated to perform any construction, remodeling work, or other improvements of any kind in connection with [Cellular Sales's] commencement and/or operation of business in the Demised Premises." And the first amendment to the lease likewise stated that, with the exception of certain work that McGonagle agreed to perform and a finish-out allowance that McGonagle provided to Cellular Sales, Cellular Sales "accept[ed] the Demised Premises [in] 'AS IS, WHERE AS' condition" and McGonagle was not obligated to perform any construction or remodeling work "in connection with Tenant's commencement and/or operation of its business in the Demised Premises."

The record also included the following testimony by McGonagle:

Q:  Now, you understand, you've heard some testimony today that Cellular Sales did in fact do some work on the front of the store and the rear of the store, correct?

A:  Correct.

Q:  And that was all done outside of the 3,050 square feet that's defined in the demised premises, correct?

A:  Correct.

Then he later testified:

Q:  And we've already agreed that the demised premises does not include the parking lot in the front, the ramp in the front, or the ramp in the rear, correct?

A:  Correct.

McGonagle further testified that the parking lot and walkways in front of the building were shared by the tenants in the shopping center and described the walkways as "commonly common."

Christopher Warwick, formerly a construction manager for Cellular Sales, testified that his "understanding of the demised premises, as most leases state, it's threshold-to-threshold within the confines of the building." And Jeffrey Bowers, a Cellular Sales employee who had negotiated twenty-seven commercial leases for Cellular Sales, testified that the "demised premises is from threshold-to-threshold, which is where we conduct business." Warwick also testified that the front parking lot, front ramp, and the rear of the store were in the Common Area as it was defined in section 6.1.

In addition, Warwick testified that the City of Dallas inspector informed Cellular Sales that, in order to obtain a certificate of occupancy, "ramps had to be constructed in the front of the building from the parking spots onto the City sidewalk, as well as an accessibility ramp from the rear parking into the back of the building."

**Damages**

Three of Cellular Sales's exhibits admitted at trial were invoices and checks showing it paid three vendors a total of $30,242: $24,500 to Fleetwood Commercial Concrete for installing ramps at the back and front of the store, $4,782 to Ace Decor & Finishes, Inc. for fabricating and painting handicap railings,[5] and $960 to Magnum Power Wash LLC for removing parking space stripes, power-washing, and re-striping the parking lot. When asked whether he had any evidence to demonstrate that the $30,242 of expenses that Cellular Sales incurred in completing the work were not the actual damages that Cellular Sales incurred, McGonagle testified that he had "no idea in regard to the costs, whether they incurred them or not."

We conclude that more than a scintilla of evidence supports the jury's finding that McGonagle failed to comply with the lease by failing to make access to the premises leased by

---

[5] The evidence showed that Ace Decor submitted an invoice and was paid for $4,782 for fabrication and installation of the railings, although the check issued to Ace Decor was for a higher amount.

Cellular Sales compliant with the ADA and supports the jury's award of $30,242 in damages. As a result, we also conclude that the record supports the jury's award of attorney's fees to Cellular Sales. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008) (providing that a party may recover reasonable attorney's fees if the claim is for an oral or written contract); *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) ("If attorney's fees are proper under section 38.001(8), the trial court has no discretion to deny them."); *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 152 (Tex. App.—Dallas 2012, no pet.) (stating that, to recover under section 38.001(8), a party must (1) prevail on his cause of action and (2) recover damages).

We sustain Cellular Sales's two issues.

### DID THE TRIAL COURT ABUSE ITS DISCRETION BY DENYING MCGONAGLE'S REQUEST FOR ATTORNEY'S FEES?

In a cross-appeal, McGonagle argues that the trial court abused its discretion by granting Cellular Sales's motion for judgment notwithstanding the verdict and denying him attorney's fees in accordance with the jury's findings.

### Background on Attorney's Fees

In McGonagle's first amended answer, he added a request for declaratory relief. His request for attorney's fees and declaratory relief stated:

### IV. Attorney's Fees and Expenses

It was necessary for Defendant to secure the services of the Law Firm of Gagnon, Peacock, Shanklin & Vereeke, P.C., licensed attorneys to prepare and defend this suit. Plaintiff should be ordered to pay reasonable attorney's fees and expenses through trial and appeal; and a judgment should be rendered in favor of Defendant's attorneys and against Plaintiff; or, in the alternative, Defendant requests that reasonable attorney's fees and expenses through trial and appeal be taxed as costs and be ordered paid directly to Defendant's attorneys, who may enforce the order for fees in the attorney[']s own name.

–11–

## V. Declaratory Relief

Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, Defendant requests that this Court consider the terms of the Lease Agreement contract and find that Defendant has no duty to pay for the ramp constructed by Plaintiff, and find that Defendant is entitled to recover reasonable and necessary attorney fees that are equitable and just.

Cellular Sales filed "Special Exceptions to Defendant's Converse Declaratory Judgment Claim" and argued that McGonagle's declaratory judgment counterclaim was unnecessary and duplicated Cellular Sales's breach of contract claim. Cellular Sales argued that McGonagle "requests the Court examine the same agreement over which Plaintiff has sued Defendant, *i.e.* the lease agreement, and determine whether Defendant is obligated to pay Plaintiff for the construction expenses Plaintiff incurred and for which Plaintiff seeks to recover from Defendant." Cellular Sales asserted that McGonagle's "declaratory judgment claim is the exact converse of Plaintiff's breach of contract claim" and that McGonagle's "apparent purpose in re-styling" Cellular Sales's breach of contract claim as a declaratory judgment counterclaim was "a thinly-veiled attempt to recover attorney's fees through the Declaratory Judgments Act." Cellular Sales asked the court to dismiss McGonagle's "converse declaratory judgment claim."

McGonagle responded that declaratory judgment was appropriate because (1) he sought "a declaration as to whose duty it [was] to pay for the ramp" that Cellular Sales constructed and that determination "would settle the dispute and put an end to the controversy" and (2) he did not plead his request for declaratory relief as a counterclaim.

The court granted Cellular Sales's special exception and gave McGonagle the opportunity to replead. McGonagle's second amended answer included the same request[6] for declaratory relief and attorney's fees and added one sentence: "Defendant also requests that the Court determine whether 'common maintenance' as defined in the Lease, includes ADA

---

[6] The minor differences between the first and second amended original answers were grammatical and a change to the law firm name.

–12–

compliance or any other construction necessary for Plaintiff to obtain a certificate of occupancy, or to keep a certificate of occupancy." Cellular Sales then moved to strike McGonagle's declaratory judgment counterclaim with prejudice on the grounds that it was not a proper declaratory judgment claim because McGonagle was "merely trying to recover his attorney's fees by seeking a declaration of non-liability on the very contract Cellular Sales has sued upon."[7] During the charge conference, Cellular Sales renewed its motion to strike McGonagle's counterclaim for declaratory relief. The trial court overruled the motion to strike "at this time."

Also during the charge conference, the following exchange took place:

THE COURT: So that leaves the attorneys fees. If you're asking for declaratory judgment, what judgment, what's it going to say? What do you hope to get out of your declaratory judgment action?

[MCGONAGLE'S COUNSEL:] Your Honor, let me turn to my pleading. Let's see, this is item number 2.

Well, number one, that Dr. McGonagle had no duty to pay for the ramps constructed by the Plaintiff. That—

THE COURT: How is that not going to be resolved by the Plaintiff's lawsuit?

[MCGONAGLE'S COUNSEL:] I think that one will be.

THE COURT: Okay.

[MCGONAGLE'S COUNSEL:] The way I understood your question what will it say.

THE COURT: Right.

[MCGONAGLE'S COUNSEL:] The second part of that is whether— whether the common maintenance as defined in the lease includes ADA compliance or any other construction necessary for the Plaintiff to obtain a certificate of occupancy.

---

[7] Cellular Sales also moved to strike McGonagle's second amended original answer because it was untimely.

THE COURT: How is that an existing dispute that's not covered by their loss? In other words, they're not trying to get certification of occupancy in the future, right?

[MCGONAGLE'S COUNSEL:] None that I am aware of.

THE COURT: So the ramps, all of that is resolved, they got their CO, they're in. Not going to come up in the future, don't really need that for any future relationship.

[MCGONAGLE'S COUNSEL:] I agree with that.

THE COURT: Okay.

. . . .

THE COURT: Here is what I'm inclined to do. I don't know whether or not you're entitled to a Jury decision on your attorneys fees. In the event you're entitled to any, but even if it's my duty to decide your attorney fee question in the event you get a declaratory judgment, I know that it's not—it's not improper for the Court to allow the Jury to give an advisory verdict with respect to attorneys fees that the Court can either use or not use.

So what I'm inclined to do is go ahead and submit the attorneys fees, and then you can argue to me whether or not as a matter of law you're entitled to some declaratory judgment action that's independent from the issues that are going to be resolved by the Plaintiff's case.

And if there isn't any, then you won't get your attorneys fees. If there is one, then I have to decide whether or not it would be equitable or just to even award attorneys fees.

So you may have some homework after this is all over with.

Does that make sense?

[MCGONAGLE'S COUNSEL:] It does, Your Honor.

Cellular Sales objected to submitting the question concerning McGonagle's attorney's fees to the jury because McGonagle had not segregated his attorney's fees and "declaratory relief is not appropriate" and "no reasonable jury could find" that McGonagle was entitled to attorney's fees. The court overruled Cellular Sales's objection.

–14–

The charge included the question: "What is a reasonable fee for the necessary services of McGonagle's attorneys, stated in dollars and cents?" The jury found that a reasonable fee was $23,000 for representation in the trial court and additional amounts for representation through appeal. The court subsequently granted Cellular Sales's motion for judgment notwithstanding the verdict on the jury's answer to the question concerning McGonagle's attorney's fees. McGonagle then appealed that portion of the final judgment.

## Standard of Review and Applicable Law

A party may not use the declaratory judgments act to obtain otherwise impermissible attorney's fees. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009); *City of Carrollton v. RIHR Inc.*, 308 S.W.3d 444, 454 (Tex. App.—Dallas 2010, pet. denied). A defendant may not use the declaratory judgments act as a vehicle "to obtain attorney's fees merely for resisting the plaintiff's right to recover." *Owens v. Ousey*, 241 S.W.3d 124, 132 (Tex. App.—Austin 2007, pet. denied). However, the grant or denial of attorney's fees in a declaratory judgment action lies within the discretion of the trial court. *Oake v. Collin Cnty.*, 692 S.W.2d 454, 455 (Tex. 1985). And the trial court's decision will not be reversed on appeal absent a clear showing that it abused that discretion. *Id.* "It is an abuse of discretion to award attorney's fees under the Uniform Declaratory Judgments Act when the statute is relied upon solely as a vehicle to recover attorney's fees." *City of Carrollton*, 308 S.W.3d at 454.

## Arguments of the Parties

### McGonagle's Arguments

McGonagle argues that he is entitled to attorney's fees under section 37.009 of the civil practice and remedies code because he "brought a cause of action under the Declaratory Judgment Act and prevailed in the district court." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008). He argues that he presented sufficient evidence at trial, through the

testimony of his attorney as his designated expert, to establish the reasonableness and necessity of his attorney's fees under section 37.009. He also contends that the jury's findings awarding him attorney's fees further show that his fees were reasonable and necessary. And he argues that the court abused its discretion by not awarding him attorney's fees "given the posture and facts of this case."

**Cellular Sales's Arguments**

Cellular Sales argues that this Court should overrule McGonagle's cross-point because McGonagle has not demonstrated that the trial court abused its discretion when it denied McGonagle an award of attorney's fees under chapter 37 of the civil practice and remedies code. It contends that McGonagle's request for declaratory relief was a "naked" attempt to recover attorney's fees under the declaratory judgments act when an award of attorney's fees to McGonagle would otherwise not be available. Cellular Sales argues that McGonagle asserted an "improper, converse declaratory judgment claim" because "[n]otwithstanding Cellular Sales' already pending breach of contract claim, McGonagle sought a declaration that he <u>did not</u> breach the parties' contract." And Cellular Sales maintains that it would have been an abuse of discretion if the trial court had awarded attorney's fees to McGonagle because he had relied upon the declaratory judgments act solely to recover attorney's fees. Cellular Sales also contends that, in exchanges between McGonagle's attorney and the trial judge during the charge conference, McGonagle's attorney admitted that his claim would be resolved by the determination of Cellular Sales's breach of contract claim and, as a result, McGonagle has waived his complaint on appeal.

Cellular Sales also argues that the jury did not decide that McGonagle was entitled to an award of attorney's fees. Instead, the trial court sought only an advisory verdict concerning the reasonableness and necessity of McGonagle's attorney's fees. And Cellular Sales states that the

trial court, not the jury, possesses the discretion to award attorney's fees under the declaratory judgments act.[8]

## Analysis

Cellular Sales pleaded a claim for breach of contract, claiming that "[d]espite Plaintiff's full performance, Defendant has failed to comply with its obligations under the Lease, namely its obligation to operate and maintain the Leased Premises' Common Areas."  In his second amended original answer, McGonagle requested declaratory relief "that this Court consider the terms of the Lease Agreement contract and find that Defendant had no duty to pay for the ramps constructed by Plaintiff, and find that Defendant is entitled to recover reasonable and necessary attorney fees that are equitable and just."  McGonagle also asked "that the Court determine whether 'common maintenance' as defined in the Lease, includes ADA compliance or any other construction necessary for Plaintiff to obtain a certificate of occupancy, or to keep a certificate of occupancy."  And McGonagle's counsel admitted at trial that the issues raised in his declaratory judgment action would be resolved by Cellular Sales's lawsuit.

We conclude that McGonagle's declaratory judgment claim duplicated issues already before the court in Cellular Sales's live pleadings.  *See BHP Petroleum Co. Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) ("The Declaratory Judgments Act is 'not available to settle disputes already pending before a court.'" (quoting *Heritage Life v. Heritage Grp. Holding*, 751 S.W.2d 229, 235 (Tex. App.—Dallas 1988, writ denied))).  McGonagle's declaratory judgment pleadings address the same controversy pleaded by Cellular Sales, namely whether McGonagle breached the lease by not making repairs needed to make the common areas of the leased premises comply with the ADA.

---

[8] Cellular Sales argues that, because McGonagle did not request findings of fact and conclusions of law that would establish the basis for the trial court's exercise of discretion, this Court cannot conclude that the trial court abused its discretion.  Given our disposition of this issue, we do not address this argument.

As a result, this case "falls squarely" within the rule that a party cannot use the declaratory judgments act merely as a vehicle to obtain otherwise impermissible attorney's fees. *Tanglewood Homes Ass'n, Inc. v. Feldman*, Nos. 14-11-01088-CV, 14-11-01089-CV, 2014 WL 1711198, at *18 (Tex. App.—Houston [14th Dist.] April 20, 2014, no pet. h.). We conclude that the trial court did not abuse its discretion by granting Cellular Sales's motion for judgment notwithstanding the verdict and in denying McGonagle attorney's fees under the declaratory judgments act. We overrule McGonagle's issue on cross-appeal.

## CONCLUSION

We reverse the portion of trial court's judgment granting McGonagle's motion for judgment notwithstanding the verdict, and reinstate and render judgment in accordance with the jury's finding of McGonagle's liability and findings awarding Cellular Sales $30,242 in damages, $57,500 in attorney's fees, and additional attorney's fees through appeal. We affirm that portion of the judgment granting Cellular Sales's motion for judgment notwithstanding the verdict requesting the trial court to disregard the jury's findings concerning McGonagle's attorney's fees.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

130246F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CELLULAR SALES OF KNOXVILLE, INC., Appellant

No. 05-13-00246-CV        V.

MARTIN E. MCGONAGLE, Appellee

On Appeal from the 160th Judicial District Court, Dallas County, Texas
Trial Court Cause No. 11-02647.
Opinion delivered by Justice Lang-Miers, Justices Myers and Lewis participating.

In accordance with this Court's opinion of this date, we **REVERSE** that portion of the trial court's judgment granting appellee Martin E. McGonagle's motion for judgment notwithstanding the verdict, and **RENDER** judgment in accordance with the jury's finding of Martin E. McGonagle's liability and findings awarding appellant Cellular Sales of Knoxville, Inc. $30,242 in damages, $57,500 in attorney's fees, and additional attorney's fees through appeal. We **AFFIRM** that portion of the trial court's judgment granting Cellular Sales of Knoxville, Inc.'s motion for judgment notwithstanding the verdict requesting the trial court to disregard the jury's findings concerning Martin E. McGonagle's attorney's fees.

It is **ORDERED** that appellant Cellular Sales of Knoxville, Inc. recover its costs of this appeal from appellee Martin E. McGonagle.

Judgment entered this 15th day of July, 2014.